UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KUSHAWN S. MILES,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No 1:18-cv-352

Honorable Paul L. Maloney

## OPINION & ORDER

This is a civil rights action brought by a state prisoner. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Schiebner, Christiansen, Larson, Turner, Novak, Rykse, and Unknown Party, and dismiss Plaintiff's claims against them without prejudice.

### Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan, though the events about which he complains occurred while he was incarcerated at the Ionia Correctional Facility (ICF) in Ionia County, Michigan.

Plaintiff sues the MDOC and the following MDOC employees at ICF: Deputy Wardens James Schiebner and John Christiansen; Residential Unit Manager (RUM) Jeffrey

Larson; Prisoner Counselor Marcus Turner; Librarian Joe Novak; Lieutenant S. Rykse; and an unnamed transfer coordinator. He also sues CFA Special Activities Coordinator David Leach, who is employed by the MDOC at its office in Lansing.

Plaintiff's complaint concerns two separate incidents, or series of incidents, giving rise to different claims against different state officials. The first incident occurred in February 2016, when Defendant Leach allegedly denied Plaintiff's request for a religious meal accommodation. Plaintiff alleges that he follows the Islamic faith under the doctrine of the Moorish Islamic Science Temple of America, Inc. Plaintiff alleges that every muslim organization other than the Moorish Science Temple of America, Inc. is accepted by the MDOC, and their followers are approved for Islamic religious meal accommodations.

Plaintiff claims that Defendants MDOC and Leach violated his rights under the First and Fourteenth Amendments to the United States Constitution, and under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2), by preventing him from practicing his religion and discriminating against his particular religious group.

The second incident, or series of incidents, began on March 3, 2016, when Prisoner Counselor Turner allegedly began "verbally assaulting" Plaintiff and calling him derogatory names in front of other prisoners and prison officials. (Compl., ECF No. 1, PageID.9.) Plaintiff filed a grievance against Turner that same day. Defendant Turner allegedly retaliated against Plaintiff the following day by filing a "false" misconduct ticket on Plaintiff. (*Id.*, PageID.10.) The misconduct ticket was dismissed, but Librarian Novak told Plaintiff that Novak's "superiors" were concerned about Plaintiff's possible misuse of state property, because it appeared that Plaintiff had used a laptop given to him for use as a prison legal writer to prepare a typed complaint against

Defendant Turner. (*Id.*) Plaintiff explained that he paid another prisoner to type the complaint, using that prisoner's word processor. Novak allegedly accepted this explanation and dropped the issue.

Several days later, RUM Larson called Plaintiff to his office to determine how Plaintiff prepared the complaint against Turner. Plaintiff gave the same explanation that he gave to Novak. Larson asked Plaintiff for the name of the prisoner, but Plaintiff refused to provide it because the other prisoner feared that he would be harassed by prison officials. Larson allegedly told Plaintiff that he hates prisoners who are "legal beagles," and that he takes an interest in "getting rid of prisoners who like[] to file grievances and complaints against his staff." (*Id.*) Larson allegedly threatened to have Plaintiff fired from his work assignment if he did not reveal the name of the other prisoner, and told Plaintiff that "it would be in his best interest to make his complaint and his grievance go away[.]" (*Id.*, PageID.10-11.) Larson told Plaintiff not to be surprised if he "ended up in the hole," was fired from his work assignment, or transferred to a more strict facility. (*Id.*, PageID.11.)

A few days later, Novak fired Plaintiff from his prison job and issued him a "false" misconduct ticket for misuse of state property. (*Id.*) Novak subsequently informed Plaintiff that Novak took these actions because he was following orders that he received from Deputy Warden Schiebner.

On March 15, Turner told Plaintiff that he should not have filed the complaint and grievance against Turner because it "pissed off a lot of people above him" and it was only "a matter of time before plaintiff finds himself in a situation that he can't get out of[.]" (*Id.*, PageID.12.) Turner told Plaintiff to "make a choice" about the grievance. (*Id.*) Out of fear, Plaintiff "signed off" on the grievance. (*Id.*)

3

That same day, Plaintiff appeared before Lieutenant Rykse regarding the misconduct ticket against him. Rykse allegedly refused to admit or review any evidence that Plaintiff could not have committed the misconduct, found Plaintiff guilty of the misconduct charge, and sanctioned him with 30 days of restrictions.

Plaintiff appealed the misconduct conviction to Defendant Christiansen, who allegedly failed or refused to respond to the appeal.

On March 17, Defendants Turner, Larson, and Schiebner prepared an order screening Plaintiff for transfer to another prison facility, and on March 23, Plaintiff was transferred to a "very strict disciplinary facility, with less privileges[.]" (*Id.*)

Plaintiff claims that Defendants Schiebner, Christiansen, Larson, Turner, and Novak, individually and jointly, violated or conspired to violate his right to substantive due process under the Fourteenth Amendment, and his right to be free from retaliation for engaging in conduct protected by the First Amendment.

Plaintiff also claims that Defendants Rykse and Christiansen suppressed evidence of Plaintiff's innocence, in violation of his right to substantive due process and equal protection.

He further claims that Defendants Schiebner, Larson, Turner, and the unknown Transfer Coordinator transferred Plaintiff to a more restrictive prison with inhumane conditions of confinement in retaliation for the exercise of Plaintiff's first Amendment rights, and in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

## II. Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to

4

join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319,

328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]--claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should his claims turn out to be frivolous.

Defendants MDOC and Leach are the first Defendants named in the action. Plaintiff's allegations against them appear first in the complaint and are also first in time. Plaintiff's claims against Defendants MDOC and Leach became factually and legally complete when Defendant Leach denied Plaintiff's request for a religious meal accommodation. These claims are not related to the claims against the other parties. They do not arise from the same transactions, and there is no overlap with respect to the individuals involved or the time in which the events at issue occurred. Moreover, Defendant Leach is not located at ICF, where the other individual defendants are located. In other words, apart from the fact that all the claims in this action involve Plaintiff's civil rights, there is no common question of law or fact between the claims against Defendants MDOC and Leach and the claims against the other defendants. Accordingly, the claims against Defendants MDOC and Leach are not properly joined to the claims against the other defendants.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and

dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983 and state law. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in 2016, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop all Defendants other than the MDOC and Defendant Leach from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by

9

Plaintiff.[3] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

Accordingly,

**IT IS ORDERED** that Defendants Schiebner, Christiansen, Larson, Turner, Novak, Rykse, and Unknown Party will be **DROPPED** from this action because they are misjoined, and Plaintiff's claims against them will be **DISMISSED WITHOUT PREJUDICE**.

Dated: May 23, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

---

[3] Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.