UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KUSHAWN S. MILES, # 237011,          )
                                     )
                    Plaintiff,       )
                                     )          Case No. 1:18-cv-352
v.                                   )
                                     )          Honorable Paul L. Maloney
MICHIGAN DEPARTMENT                  )
OF CORRECTIONS, et al.,              )
                                     )
                    Defendants.      )
_____)

## **REPORT AND RECOMMENDATION**

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C.
§ 1983 and the Religious Land Use and Institutionalized Persons Act of 2000
(RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). Plaintiff's complaint arises out of
conditions of his confinement at the Ionia Correctional Facility. The defendants are
the Michigan Department of Corrections and CFA Special Activities Coordinator
David Leach. Plaintiff alleges that, in February 2016, defendants violated his rights
under the First and Fourteenth Amendments, as well as his statutory rights under
RLUIPA, by denying his request for a religious meal accommodation.[1]

The matter is before the Court on plaintiff's motion for a preliminary injunction
(ECF No. 24), plaintiff's motion for joinder (ECF No. 32), and defendants' motion for

_____

[1] All other claims have been dismissed. (ECF No. 4, 5).

summary judgment (ECF No. 21).  The motions are opposed.  (ECF No. 23, 30, 34).
The moving parties filed reply briefs.  (ECF No. 29, 35, 36).[2]  For the reasons set forth
herein, I recommend that the Court deny plaintiff's motions, and grant defendants'
motion for summary judgment, and enter judgment in defendants' favor on all
plaintiff's claims.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no
genuine issues as to any material fact in dispute and the moving party is entitled to
judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862,
866 (6th Cir. 2016).  The standard for determining whether summary judgment is
appropriate is "whether 'the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party must prevail as a
matter of law.'"  *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir.
2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The
Court must consider all pleadings, depositions, affidavits, and admissions on file, and

---

[2] Plaintiff filed a reply brief in support of his motion for joinder that he labeled as a
"declaration."  (ECF No. 36).  Plaintiff's motion for joinder is a nondispositive motion.
Rule 7.3(c) of the Local Civil Rules states that on such motions, reply briefs "may not
be filed without leave of court."  W.D. MICH. LCIVR 7.3(c).  Plaintiff did not have the
required leave, and he cannot avoid briefing restrictions by labeling his reply brief as
a declaration.  In addition, plaintiff filed a sur-reply to defendants' motion for
summary judgment without first obtaining the required leave of court.  *See* W.D.
MICH. LCIVR 7.2(c).  Plaintiff's unauthorized briefs (ECF No. 31, 36) are disregarded.

draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting *Matsushita*, 475 U.S. at 586).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477

U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

## Qualified Immunity

Coordinator Leach argues that he is entitled to summary judgment on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage

-4-

is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' "  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016) (quoting *Anderson*, 477 U.S. at 252).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted.  . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or

constitutional question beyond debate.") (citations and quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 503 (2019). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, 739 F. App'x 834, 839 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."). The burden applies to each claim. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Preliminary Matters

Plaintiff's complaint is verified under penalty of perjury.  It is considered as an affidavit in opposition to defendants' motion for summary judgment.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Plaintiff's brief is not considered as an affidavit, however.  Although a verification appears at the end of the brief (*see* ECF No. 23, PageID.196), the brief does not contain a statement of facts.  "Verified" arguments and legal conclusions are not evidence.  Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial.  *See Medison Am. Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x. 656, 662 (6th Cir. 2009).  "Arguments in parties' briefs are not evidence."  *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

## Relevant Facts

Plaintiff was an inmate held in the custody of the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) at all times relevant to his complaint.  (Compl. ¶ 6, ECF No. 1, PageID.6).  David Leach was the MDOC's Special Activities Coordinator from April 2014 until his retirement on October 31, 2018.  (Leach Aff. ¶ 3, ECF No. 22-3, PageID.133).

Plaintiff is a "Moorish-American Muslim" and a member of the Moorish Science Temple of America, Inc.    (Compl. ¶ 18, PageID.7; Plf. Dep. 7, ECF No. 22-6, PageID.156).    On February 4, 2016, plaintiff requested a religious meal accommodation. (Compl. ¶ 19, PageID.8; ECF No. 22-1, PageID.129; ECF No. 22-2). Plaintiff joined the Moorish Science Temple of America, Inc., when he began his incarceration. (Plf. Dep. 7, PageID.156). He describes his dietary restrictions as follows:

> I'm not supposed to eat anything with haram in it, which is unlawful dangerous foods, which is h-a-r-a-m.  Or that has pork products in it, that has been cross contaminated with pork byproducts or anything that's considered contaminated from halal or haram.

(*Id.*).    Plaintiff related during his religious meal interview that he "avoid[ed] purchasing products from the commissary that contain[ed] pork or its by-products." (ECF No. 22-9, PageID.170).

In February 2016, Coordinator Leach received an MDOC Religious Meal Interview Report and Recommendation.  Based on the statements contained within the interview report and plaintiff's prison store purchases, Coordinator Leach denied plaintiff's request to be placed on the religious meal plan because the food items he was purchasing from the prison store conflicted with his stated religious dietary requirements. (ECF No. 22-1, PageID.127-29; ECF No. 22-2, PageID.131; Leach Aff. ¶ 6, PageID.134; ECF No. 22-4, PageID.138-40).  Plaintiff could have supplemented his diet through purchasing food items through the prison store that complied with

his professed religious dietary needs and plaintiff has not been permanently barred from receiving a religious diet accommodation, as he may reapply as is provided in MDOC PD 05.03.150. (Leach Aff. ¶ 7, PageID.134).

Allowing a prisoner to have a religious meal when he openly flaunts restrictions imposed on other same-faith prisoners could provoke resentment amongst other prisoners who are adhering to the tenets, which could lead to violence within the facility. (*Id.* at ¶ 8, PageID.135).

## Discussion

## I.    Plaintiff's Motion for a Preliminary Injunction

Plaintiff seeks a preliminary injunction ordering the MDOC's current special activities coordinator to provide him with a Halal diet. "A preliminary injunction "is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation and quotation omitted). Because it is an extraordinary remedy, such relief is only granted where movant carries his burden of proving that the circumstances clearly demand it. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also* FED. R. CIV. P. 65. The four factors this court is to consider on a motion for a preliminary injunction are well-established. *See Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

None of the four factors weighs in favor of granting the extraordinary relief plaintiff requests. He has not shown a strong likelihood of success on the merits of his claim. Plaintiff has not shown that an injunction is necessary to prevent

-9-

irreparable harm. The public interest would not be served by granting the extraordinary relief plaintiff requests, and entry of such an order would constitute an unwarranted intrusion into the State's operation of its prisons.  Accordingly, I recommend that plaintiff's motion for a preliminary injunction be denied.

## II.    Plaintiff's Motion for Joinder

On February 19, 2019, plaintiff filed a motion under Federal Rule of Civil Procedure 20 requesting "permissive joinder" of claims against Chaplain David Rink and CFA Special Activities Coordinator Steve Adamson, based on the 2018 denial of plaintiff's request for a religious meal accommodation.  (ECF No. 32).

Rule 20(a)(2) provides that persons "may" be joined in an action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).  " 'Joinder of parties is a matter highly dependent on judicial discretion.' " *Herndon v. Heyns*, No. 1:15-cv-1183, 2016 WL 11475290, at \*7 (W.D. Mich. Aug. 22, 2016) (quoting *Indep. Liberty Life Ins. Co. v. Fiduciary & Gen. Corp.*, 91 F.R.D. 535, 537 (W.D. Mich. 1981)).

Allowing the requested joinder would be prejudicial to the defendants. Discovery is closed and dispositive motions have been filed.  If new claims and defendants were added at this date, it would unnecessarily delay resolution of this case because discovery would need to be reopened and a new dispositive motion deadline established.[3]  Accordingly, the Court should deny plaintiff's motion for joinder.

## III.    Defendants' Motion for Summary Judgment

### A.    Eleventh Amendment Immunity

Plaintiff's claims for damages against the MDOC and Coordinator Leach in his official capacity are barred by Eleventh Amendment immunity.[4]  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

---

[3] Plaintiff's motion would fare no better if considered as a motion for leave to amend his complaint to add new claims and defendants because the same considerations would weigh against allowing an amendment.  Further, the motion is not accompanied by a proposed amended complaint.  It is an appropriate exercise of the district court's discretion to deny a motion for leave to amend where the plaintiff fails to file a proposed amended complaint.  *See Beydoun v. Sessions*, 871 F.2d 459, 469-70 (6th Cir. 2017).

[4] Alternatively, the Court could dismiss these claims because they have been abandoned.  Plaintiff has now clarified that his RLUIPA claim against the MDOC and his claims against Coordinator Leach are limited to claims for injunctive and declaratory relief.  (Plf. Brief, 14-16, ECF No. 23, PageID.193-95).

Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

RLUIPA does not provide a cause of action for damages. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Haight v. Thompson*, 763 F.3d 554, 567-568 (6th Cir. 2014).  The statute did not abrogate sovereign immunity under the Eleventh Amendment.  *See Sossamon*, 563 U.S. at 293.

B.    <u>Mootness</u>

Defendant Leach provides a one-paragraph argument, citing no legal authority, asserting that plaintiff's claims against him in his official capacity for prospective injunctive relief are moot because he has retired and "no longer has authority to make any decisions regarding the [p]laintiff[.]"    (Plf. Brief., 9, PageID.22).

-12-

Rule 25(d) provides as follows:

(d) **Public Officers; Death or Separation from Office.**  An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.  The court may order substitution at any time, but the absence of such an order does not affect the substitution.

FED. R. CIV. P. 25(d); *see Horacek v. Heyns*, No. 2:13-cv-280, 2016 WL 11263235, at *3 (W.D. Mich. Dec. 15, 2016) ("[W]hen defendants sued in their official capacities leave their positions, their successors automatically assume their roles in the litigation.").

Plaintiff's claim for injunctive relief against Coordinator Leach in his official capacity should not be dismissed as moot.  Under Rule 25(d), claims against Coordinator Leach in his official capacity were "extinguished" when his successor took his office and was "automatically substituted" in his place.  *See Kaminski v. Coulter*, 865 F.3d 339, 343 (6th Cir. 2017).

C.    First Amendment

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. CONST. amend I.  The right to freely exercise one's religion is applicable to the States through the Fourteenth Amendment.  *See Cantwell v. Conn.*, 310 U.S. 296, 303 (1940).

-13-

To establish that this right has been violated, plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief.  *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

The Supreme Court has observed that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  But "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Wolfish*, 441 U.S. at 545.  Operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights.  *See Turner*, 482 U.S. at 85.  The standard by which this

balancing occurs was articulated by the *Turner* Court, which held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (citation and quotation omitted).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

(1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

(2) whether there are alternative means of exercising the right that remain open to prison inmates;

(3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

(4) whether there are ready alternatives available that fully accommodate the prisoner's rights at a *de minimus* cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest that motivated it. This burden is "slight, and in certain instances, the connection may be a matter of common sense." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). If

-15-

the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484. The *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

Coordinator Leach has provided evidence that he based his decisions on the fact that plaintiff was contemporaneously purchasing food items which were inconsistent with the religious meal accommodation he was requesting. Plaintiff's actions in this regard called into question the sincerity of his professed religious beliefs. (Leach Aff. ¶¶ 6-7, ECF No. 22-3, PageID.134). Permitting prisoners to participate in the religious meal program while simultaneously purchasing foods that were inconsistent with their requested religious diet presented security concerns: "Allowing a prisoner to have a religious meal when he openly flaunts restrictions imposed on other same-faith prisoners could provoke resentment amongst other prisoners who are adhering to the tenets, which could lead to violence within the facility." (*Id.* at ¶ 8, PageID.135).

-16-

Plaintiff argues that his store purchases were "irrelevant" because he traded items with other prisoners.  (Plf. Brief, 2, PageID.181).  Plaintiff's store purchases were relevant, and he provides no evidence indicating that he offered the decisionmaker an explanation how such purchases were consistent with his religious dietary needs.  Plaintiff's argument that defendants' reasoning was "misleading" because his Religious Meal Participation Agreement would not go into effect until after a religious diet was approved (*id.* at 2, PageID.181) is likewise unpersuasive. The decision to deny plaintiff's request based on his store purchases was reasonable in the absence of any agreement.  "It is reasonable for prison officials to deny special religious diets to prisoners who consume or purchase food which is inconsistent with the requested religious diet." *Perreault v. Mich. Dep't of Corr.*, No. 1:16-cv-1447, 2018 WL 3640356, at *3 (W.D. Mich. Aug. 1, 2018) (citing *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009)).

It is also well recognized that prison officials have a legitimate interest in maintaining discipline within the prison.  "Permitting [p]laintiff to participate in a religious diet program when he has a demonstrated history of consuming or purchasing food in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions." *Perreault*, 2018 WL 3640356, at *3.  Defendants have established that there exists a valid, rational connection between their actions and the legitimate governmental interest put forward to justify such.

-17-

The remaining *Turner* factors likewise weigh in defendants' favor.  Prisoners can supplement their diet by purchasing food items from the prison store.  Plaintiff has not been permanently barred from receiving a religious diet accommodation, as he can reapply for such as provided in the relevant MDOC Policy Directive.  (Leach Aff. ¶ 7, ECF No. 22-3, PageID.134).

I recommend that the Court grant defendants' motion for summary judgment on plaintiff's First Amendment claims.

D.    Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1; *see Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007).

Plaintiff was required to present evidence demonstrating "intentional and arbitrary discrimination" by the state.  That is, he must demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff was required to present evidence that provision of special diet to other prisoners "constitute[d] disparate treatment of similarly-situated individuals" and "further prove that the disparate treatment in question is the result of intentional and purposeful discrimination." *Robinson v. Jackson*, 615 F. App'x 310,

314 (6th Cir. 2015).  Plaintiff did not present evidence that he was treated differently from similarly situated prisoners or that the denial of his request for a special diet was the result of intentional and purposeful discrimination.  I find that defendants are entitled to judgment in their favor as a matter of law on plaintiff's equal protection claims.

### E.    RLUIPA

RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).

The statute does not define the term "substantial burden."  Nonetheless, to come within the scope of RLUIPA the burden in question must render religious exercise "effectively impracticable."  *Perreault*, 2018 WL 3640356, at *4; *see also, Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).  A "substantial burden" requires something more than an incidental effect on religious exercise."  *Morgan v. Trierweiler*, No. 2:19-cv-3,  2019 WL 2098179, at *4 (W.D. Mich. May 14, 2019).  A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise."  *Kitchen v. Leach*, No. 1:17-cv-371, 2019 WL 2647892, at *3 (quoting *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005)); *see also Clinton v. Duby*, 2018 WL 5276252, at *3 ("RLUIPA was not intended to create a cause of action in response to every decision

which serves to inhibit or constrain religious exercise, as such would render meaningless the word 'substantial.' ").

Plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened. *See Kaufman v. Schneiter*, 474 F. Supp.2d 1014, 1025 (W.D. Wis. 2007). Denial of participation a special meal program does not constitute a substantial burden unless the removal or denial is permanent. *See, e.g., Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020 at *26 (W.D. Mich. Sept. 30, 2008). Moreover, even if the Court assumes that plaintiff's ability to practice his religion has been substantially burdened, defendants have shown that their actions constitute the least restrictive means of further compelling governmental interests. *Perreault*, 2018 WL 3640356, at *4; *Treece v. Burnett*, 2007 WL 2815020 at *6 (W.D. Mich. Sept. 25, 2007) ("[w]hile RLUIPA provides certain protections to an inmate's ability to express his religious faith, RLUIPA does not elevate accommodation of religious observances over an institution's need to maintain order and safety"). Plaintiff's rights under RLUIPA were not violated by Coordinator Leach's decisions not to allow plaintiff to receive a religious dietary accommodation.

Accordingly, I recommend that the Court grant defendants' motion for summary judgment on plaintiff's RLUIPA claims.

F.   <u>Qualified Immunity</u>

Coordinator Leach claims entitlement to qualified immunity on plaintiff's claims for damages against him in his individual capacity.  Plaintiff fails to satisfy the first prong of the qualified immunity analysis for the reasons stated in section III C and D.

The second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198.  Existing precedent "must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. at 551.  It was plaintiff's burden to convince the Court that the law was clearly established when Coordinator Leach acted.  *See Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992-93 (6th Cir. 2017).

Plaintiff invokes *Pearson v. Callahan*, 555 U.S. 223 (2009), and *Bishop v. Hacker*, 636 F.3d 757 (6th Cir. 2011), in support of his argument that Coordinator Leach's action violated his clearly established rights.  (Plf. Brief, 1, PageID.180).  Both cases addressed qualified immunity, but neither involved claims based on a denial of a prisoner's request for a religious meal accommodation.  *Pearson* involved an arrestee's claim that a warrantless search violated his Fourth Amendment rights. 555 U.S. at 227.  *Bishop* was a claim by an inmate that jail officials violated his Eighth Amendment rights by deliberate indifference to the risk that he would be sexually assaulted.  636 F.3d at 761.  These cases did not clearly establish the right that

plaintiff claims Coordinator Leach violated.

Plaintiff has not carried his burden of demonstrating that existing precedent placed the constitutional question beyond debate at the time Coordinator Leach acted.  Accordingly, I find that Coordinator Leach is entitled to qualified immunity on plaintiff's First and Fourteenth Amendment claims for damages against him in his individual capacity.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Court deny plaintiff's motion for a preliminary injunction (ECF No. 24) and his motion for joinder (ECF No. 32).  I further recommend that the Court grant defendants' motion for summary judgment (ECF No. 21) and enter judgment in defendants' favor on all plaintiff's claims.

Dated:  August 1, 2019              /s/  Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a forfeiture of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, Nos. 17-1993/2039, __ F. 3d __, 2019 WL 2710236, at *6 (6th Cir. June 28, 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).